COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss                                           CIVIL ACTION NO.   13-3566

GUY EMMERSON,           )
    Plaintiff,           )
                       )
-v-                     )
                       )
MASSACHUSETTS PORT      )
AUTHORITY,              )
                       )
    Defendant.          )

[Stamp: MICHAEL JOSEPH DONOVAN CLERK/MAGISTRATE 2013 OCT -7 AM 9:43 SUFFOLK SUPERIOR COURT]

## COMPLAINT AND JURY CLAIM

I. Parties

1. Guy Emerson (Hereinafter "Emerson") is a natural person whose residence is located in Dayton, Maine.

2. The Massachusetts Port Authority (Hereinafter "Massport") is a division of the Commonwealth of Massachusetts and has as its primary location, 1 Harborside Drive, in East Boston MA.

II Facts

3. Massport operates the Boston Logan International Airport.

4. Emerson served as an Aviation Officer and Special State Police Officer at Logan Airport, and was employed by Massport from December 13, 2004, through June 27, 2012.



[Stamp: RECEIVED DEC 11 2013 MASSACHUSETTS PORT AUTHORITY LEGAL DEPARTMENT]

5. Aviation Officers are included in a bargaining unit that is represented by the Teamsters, Local 25.

6. Aviation Officers, who are also Massachusetts Special State Police Officers, are responsible for controlling vehicular and personnel access onto the Airfield Operations area.

7. On or about January 13, 2012, Emerson reported to his Supervisor, Ms. Freadman, and Massports Human Resources Department, that he believed that another Aviation Officer, Robert Taylor, had engaged in discriminatory behavior directed at Massport employees and other persons in the workplace.

8. Instead of being grateful to Emerson for his reporting of such behavior, Freadman became angered and told Emerson that he was "not qualified to judge what was, and what wasn't discrimination" and that any future issues that Emerson had with Officer Taylor's "discriminatory behavior," were to be directed to her assistant, Matt Hatfield, and Matt Hatfield only!

9. Prior to this, Emerson reported Taylor's abusive and discriminatory behavior directly to his Supervisors, Sgt. Dana Cook and Airport Security Compliance Manager, Fred Suozzo, in addition to Aviation Officer, Sergeant Paul Coronite, who in turn, reported Taylor's abusive and discriminatory behavior to Massports Deputy Director of Aviation Security, Herby Duverne.

10. Emerson e-mailed two written complaints, one in April of 2009, and one in February of 2011, to Massports Human Resources Department, Massports Diversity Department, and to numerous Massports Administrator's, including Dennis Treece, and Robert Taylor's Department Head, Herby Duverne, identifying himself as an Aviation Officer, and reporting about what he believed to be inappropriate and discriminatory behavior of Robert Taylor.

11. Upon information and belief, no investigation was undertaken by Massport Human Resources Department, Massports Diversity Department,.

12. Emerson also e-mailed his April 2009 and February 2011 complaints to Massports Director of Diversity, Sandra Casey Buford, and to Massports Workforce Diversity Manager Valerie Bennett-Williams. Despite the fact that Buford e-mailed Emerson back, stating that Williams would be in touch, Emerson never heard back from Buford or Williams, or anyone else from Massports Diversity Department.

13. Upon information and belief, Emerson believes that both Massport and Taylor knew that he was the person who had made the aforementioned complaints.

14. On January 21, 2012, against Freadman's wishes, Emerson filed a complaint with Massports Human Resources Department about Taylor's discriminatory treatment of minority vendors, and sent a copy of the complaint to his Supervisors, Michele Freadman and Matt Hatfield.

15. Massports Human Resources Director, David Gambone, refuses to speak with Emerson about his discrimination complaint against Robert Taylor, and when contacted by Massports Assistant Director of Employee Relations, Caryn Harding, Harding criticized Emerson for having filed his complaint on two separate occasions.

16. January 25, 2012, Just four (4) days after reporting Robert Taylor for discrimination, Emerson was accused of improper use of a Massport Computer. The incident in question had allegedly occurred, five (5) months earlier, on August 20, 2011.

17. On February 9, 2012, Freadman notified Emerson that he is to appear at a disciplinary hearing on February 13, 2012, to answer to the charge that he made a computer generated image of Robert Taylor on a Massport computer, five (5) months earlier, on August 20, 2012.

18. On February 10, 2012, Emerson contacted his union president Sean O'Brien and requested representation at his February 13, 2012 hearing. This request was denied.

19. On the same date, Emerson experienced severe chest pain, and was transported to Massachusetts General Hospital by ambulance. Emerson is advised by hospital staff not to return to work until he follows up with his Primary Care Physician and his cardiologist.

20. The following morning, Saturday, February 11, 2012, Michele Freadman's assistant, Matt Hatfield, calls Emerson, insisting that Emerson still attend the disciplinary hearing on February 13, 2012. Hatfield refused to accept Emerson's Massachusetts General Hospital discharge notes as evidence that the hospital staff told Emerson not to return to work or drive, until he followed up with his Primary Care Physician and his cardiologist the following week..

21. Despite being out of work with a work related injury, Freadman suspended Emerson for a month without pay, gave Emerson a direct order not to enter upon any and all Massport property, not to speak with or have any contact with any of his fellow employees and ordered Emerson to turn in his work uniforms and any other Massport property in his possession. Freadman and Hatfield also tell Emerson's fellow employees, many who have been Emerson's friends for the past eight (8) years, that they are not allowed to speak with Emerson.

22. On March 19, 2012, Emerson was cleared to return to work by his Cardiologist and his Primary Care Physician. Upon returning to work, Emerson discovers that Freadman and Hatfield did _not_ file a First Report of Injury or Fatality-Form (101) with the Department of Industrial Accidents, for the work related injury Emerson suffered on February 10, 2012.

23. On March 22, 2012, Emerson files a First Report of Injury or fatality-Form (101) with the Department of Industrial Accidents, and, at the same time, files a complaint against Freadman and Hatfield for not reporting the workplace injury that he suffered on February 10, 2012, to the Department of Industrial Accidents,

24. On March 27, 2012, Emerson e-mails a copy his complaint against Freadman and Hatfield to Massports Director of Labor Relations, Attorney Kelly Strong, and sends a copy of his complaint to Freadman and Hatfield.

25. On March 29, 2012, two (2) days after Freadman and Hatfield received a copy of the complaint that Emerson filed against them for not reporting his work related injury to the Department of Industrial Accidents, Hatfield approaches Emerson, while Emerson is off duty retrieving some work clothes and food from Massports South Security Gate, and angrily tells Emerson that he may no longer use the South

Security Gate, which Emerson and others had been using as a break room/locker room for the past eight years.

26. On April 05, 2012, nine (9) days after Emerson complained about Freadman and Hatfield, Emerson's supervisor Matt Hatfield and provides him with notice that Emerson is being ordered to appear at a disciplinary hearing on Monday, April 9th, 2012.

27. The disciplinary notice states that on October 7th, 2012, October 8th, 2012, October 9th, 2012, and October 12, 2012, Six (6) months earlier, Emerson used his work place computer for personal use to create a computer generated image of Taylor, which Emerson repeatedly has denied.

28. April 06, 2012, Emerson meets with Massports Diversity Director, Sandra Casey Buford. Buford denies having received Emerson's January 21, 2012 complaint against Taylor, and goes on to state that she (Buford) has never received any discrimination complaints against Taylor, anonymous or otherwise, even though Emerson has in his possession, e-mails from Buford responding to Emerson's April 17, 2009 discrimination complaint against Taylor.

29. About one hour after Emerson met with Massports Director of Diversity, Sandra Buford, Hatfield approaches Emerson while working at Massport, and demands that Emerson write out a detailed statement describing who Emerson met with at Massports Diversity Department and what was discussed. Emerson refused this request believing that it violated Massport policy.

30. On April 06, 2012, Emerson files a complaint against Hatfield with Massports Director of Diversity Sandra Buford, as well as Massports Human Resources Department, and sends a copy of the complaint to Hatfield. Buford later contacts Emerson and tells Emerson that she has spoken with Hatfield about interfering in confidential conversations between Massport employees and Massports Diversity Department.

31. On April 08, 2012, Emerson filed a complaint against Hatfield and Freadman for harassing and retaliating against him. Emerson sent the complaint to Massports Human Resources Director, David Gambone, Massports Director of Emergency Management, Herby Duverne and Massport Aviation Officer Sergeant, Paul Coronite.

32. On April 12th, 2012, four (4) days after Emerson files a complaint against Freadman and Hatfield for harassment and retaliation, Emerson was called into Freadman's office and was suspended. Emerson receives a letter from Freadman stating that, effective April 12, 2012; Emerson is immediately suspended, pending an investigation.

33. On April 17th, 2012, five (5) days after Emerson is suspended by Freadman, Emerson received a letter at home from Freadman stating that on April 5th, 2012, twelve (12) days earlier, Emerson called fellow Aviation Officer Sam Brown rotten, and on April 6th, 2012, eleven (11) days earlier, Emerson told a fellow Aviation Officer that Brown had ratted him out.

34. On April 19th, 2012, Emerson's PCP, Doctor Rolerson, puts Emerson out of work on Workplace Stress.

35. On or about May 29, 2012, Emerson files a Complaint with the Massachusetts Commission Against Discrimination, alleging that he had been subjected to disparate terms and conditions of employment for having reported Taylor's discriminatory behavior.

36. Freadman and Hatfield hold disciplinary hearings while Emerson is out on medical leave.

37. On June 06, 2012, Freadman sends Emerson a letter stating that she held a disciplinary hearing in Emerson's absence on May 29, 2012. The letter stated that Emerson was found guilty and being suspended for five (5) days without pay, for having called a fellow Aviation Officer rotten. Freadman acknowledges in this letter, that Emerson "Provided the Authority with medical documentation that indicates that he was unable to work due to medical reasons until at least June 22, 2012."

38. On or about June 27, 2012, Massport terminated Emerson.

## COUNT I

(Discrimination in Violation of G.L. 151B §4 ¶4)

39. Emerson reiterates the allegation contained in Paragraphs 1 through 38.

40. Emerson believes and therefore avers that he was terminated not for any legitimate business reason, but because he engaged in a protective activity, that is, the reporting of discriminatory behavior by a Massport employee.

WHEREFORE, the Plaintiff demands that:

A.  That the Plaintiff be reinstated to his former position with the Defendant and that he is to be awarded full back and front pay.

B.  That damages be assessed against the Defendant for emotional stress suffered as a result of the wrongful termination from the Complainant's employment.

C.  That the Defendants be ordered to pay the Complainant all reasonable attorneys' fees plus costs of this action in accordance with M.G.L. 151(B).

D.  That the Court order such other remedies as appears just and proper.

## COUNT II

(Infliction of Emotional Distress)

41. Emerson reiterated the allegations contained in paragraphs 1 through 40 of the Complaint.

42. Emerson alleges that the conduct of Massport in the course of their misconduct described herein, intentionally, knowingly and without privilege, subjected Emerson to extreme and outrageous conduct beyond all bounds of decency in a civilized society.

43. The conduct described herein caused Emerson to suffer humiliation, indignity, and injury to his feelings. Emotional distress, with physical manifestations and lost wages.

WHEREFORE, Emerson demands judgment against Massport and the for injury proximately caused by its action/s, including but not limited to, damages for humiliation, indignity and injury to feelings, damage for emotional and physical harm, lost wages, costs of attorney's fees and interest, and such other and further relief as to this court seems just and proper.

## COUNT III

### (Retaliation)

44. Emerson repeats and reiterates the allegations contained in paragraphs 1 through 43 of the Complaint.

45. Emerson believes, and therefore avers, that his termination was undertaken not for any lawful reason, but because he filed an allegation of improper conduct against another officer.

WHEREFORE, the Plaintiff demands judgment as follows:

A.   That the Plaintiff be reinstated to his former position with the Defendant and that he be awarded full back pay.

B.   That damages be assessed against the Defendant for emotional stress suffered as a result of the wrongful termination from employment.

C.   That the Defendants be ordered to pay all reasonable attorney's fees plus costs of this action in accordance with M.G.L. 151B.

D.   That the Court orders such other remedies that seem just and proper.

THE PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.

I, Guy Emerson, do depose and say under oath, that the allegations contained in this Complaint are true and accurate to the best if my knowledge.

Signed under the pains and penalties of perjury this _____ day of September, 2013.

_____

Guy Emerson

I, Guy Emerson, do depose and say under oath, that the allegations contained in this Complaint are true and accurate to the best if my knowledge.

Signed under the pains and penalties of perjury this 18 day of September, 2013.

*[signature: Guy Emerson]*

Guy Emerson

*Signed before me on September, 18th, 2013.*

*[signature: Yvonne P. Shaw]*

YVONNE P. SHAW
Notary Public, Maine
My Commission Expires October 5, 2014

_____

James R. Tewhey, Esq

BBO# 634810

70 Washington Street, Suite 405

Salem, MA  01970

978-741-5200

jtewheyemplaw@gmail.com